UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA L. MILLER,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br>Defendant. | No. CV-10-00155-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 14, 19.) Attorney Maureen J. Rosette represents Lisa L. Miller (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** the Defendant's motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on May 1, 2006. (Tr. 109.) She alleged disability due to "thyroid cancer, legs, fatigue, anxiety and depression," with an alleged onset date of May 1, 2003. (Tr. 101.) Her claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on January 16, 2008 before ALJ Paul L. Gaughen. (Tr. 23.)

Plaintiff, who was represented by counsel, and vocational expert Daniel McKinney, testified. (Tr. 25-51.) The ALJ denied benefits on May 1, 2008, and the Appeals Council denied review. (Tr. 13-22; 1-3.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 38 years old with an eighth grade education. (Tr. 21; 32.) Plaintiff's past work experience includes working as a cocktail waitress, bartender, and a cook. (Tr. 41; 88-94.)

Plaintiff lives with her two children, her boyfriend and his mother. (Tr. 239.) Plaintiff testified that she cannot work due to her feet and her anxiety. (Tr. 33.) She explained that her "arches fell" and she eventually had surgery on her feet. (Tr. 33-34.) Plaintiff stated that even after surgery, her feet still swell, forcing her to elevate or soak them in water several times per day. (Tr. 34-35.) She said her anxiety makes her reluctant to leave her house, and being around the public makes her feel like she cannot breathe. (Tr. 35.) She reported she could perform activities of daily living and household chores at her own pace. (Tr. 36-37.) Plaintiff also said she can walk about four blocks, can pick up a bag of potatoes or a 12-pack of pop, can travel up and down stairs, and she can drive. (Tr. 39.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not

one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. *Hoffman v. Heckler*, 785 F.3d 1423, 1425 (9th Cir. 1986). The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (1999).

**ADMINISTRATIVE DECISION**

ALJ Gaughen found Plaintiff was insured for DIB through June 30, 2005. (Tr. 15.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2003, the

alleged onset date. (*Id.*) At step two, he found Plaintiff had severe impairments of "bilateral gastroc equinus, resulting in bilateral plantar fasciitis, bilateral ankle instability, dysthymia, and posttraumatic stress disorder (PTSD)." (Tr. 16.) He concluded recently diagnosed mental impairments were not severe. (Tr. 23.) The ALJ determined at step three Plaintiff's medically determinable impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 16.) The ALJ found Plaintiff's subjective complaints regarding functional limitations were not fully credible. (Tr. 18.) At step four, the ALJ concluded plaintiff's residual functional capacity was light exertion work:

> The claimant can lift or carry up to 20 pounds occasionally, and frequently lift or carry 10 pounds. The claimant can sit for a total of six hours and stand or walk for a total of four hours in an eight-hour workday. She could stand for about one hour at a time and she could walk for about 1/4 to 1/2 mile at a time. The claimant has good use of her arms and hands for repetitive grasping, holding and turning objects. She can occasionally perform such postural activities as balancing, stooping, kneeling, crouching, crawling and climbing. However, the claimant can less than occasionally squat or perform other similar postures that would place stress on the ankles. She may exhibit slight limitation in highly engaging social interaction or in maintaining her pace.

(Tr. 17.) The ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 21.) After taking into account Plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ concluded jobs that the Plaintiff can perform, such as assembly worker, product inspector and hand packer, exist in significant numbers in the national economy. (Tr. 21-22.) As a result, the ALJ concluded Plaintiff has not been under a disability as defined in the Social

Security Act since May 1, 2006, the date the application was filed. (Tr. 28.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett,* 180 F.3d at 1097 (9th Cir. 1999).“The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to

resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

The question is whether the ALJ’s decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ’s credibility determination was erroneous because it was not supported by specific, clear and convincing reasons. Plaintiff also argues the hypothetical did not adequately address her psychological impairments. (ECF No. 15 at 15; 17.) Defendant contends the ALJ’s decision is supported by substantial evidence and is free of legal error. (ECF No. 20 at 8-14.)

## DISCUSSION

### A. Credibility

Plaintiff contends insufficient evidence exists to support the ALJ's decision. She contends that she is more physically limited than the ALJ determined, and that she is disabled due to the

impairments related to her feet and her anxiety.[1] (ECF No. 15 at 11.) She agues medical evidence supports her physical impairment, and the ALJ erred by failing to credit her testimony about the severity of her pain. (ECF No. 15 at 13; 15.) Plaintiff also alleges that the ALJ erred by failing to identify particular facts that supported the negative credibility finding. (ECF No. 15 at 15.)

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for

---

[1] Plaintiff also contends that the ALJ's decision was based in error because she has objective medical evidence of a cervical spine impairment. Plaintiff points to an MRI that showed mild spondylosis with decreased disc space height and endplate changes. (ECF No. 15 at 11-12.) But Plaintiff fails to provide any briefing or explanation as to how the cervical spine impairment manifests in symptoms that contribute to an alleged disability. The court is unable to consider matters that are not "specifically and distinctly argued" in a party's brief. *Carmickle v. Commissioner, Soc. Security Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir.2008). In the absence of applicable legal argument or analysis, the court will not address this issue.

rejecting the claimant’s testimony must be “clear and convincing.” *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). “General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the c1aimant's complaints.” *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In weighing credibility, the ALJ considers factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and “ordinary techniques of credibility evaluation.” *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)(citing Social Security Ruling (“SSR”) 88–13; quotation marks omitted). The ALJ may also consider an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Contrary to Plaintiff’s assertions, the ALJ provided specific reasons for discrediting her claims about the severity of her pain. First, the ALJ noted that Plaintiff was fitted for orthotics in 2001, but she did not seek treatment again until July, 2006. (Tr. 18; 283.) Additionally, the ALJ noted that Plaintiff continued working through 2003, and did not seek additional treatment on her feet for approximately three years. The ALJ concluded that these facts indicated that at the time Plaintiff alleged her disability commenced (2003), it is likely even Plaintiff did not feel her symptoms were severe, since she did not seek treatment and continued

working. (Tr. 18.)

Second, the ALJ found that Plaintiff's symptoms related to her bilateral foot and ankle impairment were adequately remedied by her surgeries. The ALJ noted that the records from May 2007 reveal that Plaintiff recovered as expected, and she reported feeling better. (Tr. 19; Tr. 297-308.)

Finally, ALJ also relied upon the fact that Plaintiff uses no pain medication as evidence that she is no longer experiencing limiting pain. Additionally, Plaintiff's daily activities are not as limited as would be expected, given the severity of her complaints. (Tr. 19-20.)

In this case, the ALJ's conclusions are specific, and supported by the record. The Plaintiff provided scant medical records from 2003-2005, and none appeared related to her feet. (See, e.g., Tr. 198; 201; 205.) She testified at the hearing that around 2004, her mother died, she was diagnosed with thyroid cancer, and her "feet went bad." (Tr. 40-41.) Plaintiff testified that at the time, she was waitressing, but that "came to an end when I couldn't do anything more, my feet, I was living on pain pills to get through and it was just all, I would sleep and eat pain pills to get through a day." (Tr. 41.)

In 2006-07 Plaintiff had two surgeries to correct the problems with her feet. As she recovered, Plaintiff requested decreased doses of pain medications. (Tr. 297-308.) On March 12, 2007, Plaintiff told her doctors that her left ankle felt "great" and that she was ready for surgery on her right. (Tr. 369.) On May 3, 2007, after surgery on the right, Plaintiff reported the ankle was "doing good" and was sore only around the sutures. (Tr. 380.) About a week later,

she related to her doctor that her pain was getting better, but she still needed a prescription for pain medication. (Tr. 381.) But two months later, Plaintiff reported to Dr. Brim that her foot was swollen, her ankles felt unstable, and physical therapy did not seem to help. (Tr. 384.)

In August, 2007, Plaintiff asked Dr. Brim to write a statement for her disability claim. (Tr. 385.) Based upon his conversation with Plaintiff, Dr. Brim wrote a letter indicating that Plaintiff has increased stability in her ankles after surgery, but she continues to experience pain after standing and walking for approximately two hours. Dr. Brim concluded: "At this point, she should be able to stand/walk for up to four to five hours per day in a work week. I do not believe that she will progress beyond this because of the foot and ankle pathologies." (Tr. 353.)

Contrary to Plaintiff's claim, Dr. Brim does not endorse Plaintiff's self-reported limitation that she must elevate her feet 4-5 times per day for up to 45 minutes at a time. Dr. Brim merely notes that Plaintiff's ankles were improved after surgery, and she should be able to walk and/or stand for up to four to five hours per day in a work week.

The ALJ also noted that Plaintiff does not use pain relievers, which detrimentally affects her credibility related to her pain complaints. The amount of treatment Plaintiff received is a permissible consideration in credibility findings. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). An ALJ may also discredit subjective pain complaints where the claimant received

"minimal" and "conservative" treatment. *Meanel v. Apfel*, 172 F.3d at 1114. In this case, Plaintiff's allegations that she suffers from disabling pain is undermined by her failure to seek treatment or use medications. The ALJ appropriately used this factor in determining that Plaintiff's diminished credibility.

Finally, the ALJ noted that Plaintiff's daily activities do not appear as limited as expected, given the intensity of pain alleged by Plaintiff. (Tr. 20.) The record reveals that Plaintiff cares for her young children, dog and boyfriend, completes household tasks including laundry, preparation of meals, grocery shopping, and can lift up to 20 pounds. (Tr. 36-38; 240;) She also attends school functions with the children, and in 2006, Plaintiff attended GED classes from 9:00 a.m. to 2:00 p.m. daily, and Plaintiff admitted that she can pay attention for a long time. (Tr. 240.)

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Activities such as caring for young children may undermine claims of disabling impairment. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001). Here, the record supports the ALJ's observations that Plaintiff's daily activities are inconsistent with Plaintiff's claims of disabling pain. This is a proper factor to consider in determining credibility.

If properly supported, the ALJ's credibility determination is entitled to "great deference." *See Green v. Heckler,* 803 F.2d 528, 532 (9th Cir. 1986). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala,* 10

F.3d 678, 679–80 (9th Cir. 1993). The facts in this record – Plaintiff waited three years to seek treatment; she had surgery on each foot and recovered well; and she no longer needs pain medication – were properly considered, and constitute clear and convincing reasons for finding Plaintiff's subjective complaints lacked credibility.

**2. Anxiety.**

Plaintiff contends that the ALJ erred by failing to incorporate into the hypothetical all of her mental limitations. In support of greater limitations, she cites her own testimony, the records from Spokane Mental Health that indicate Plaintiff was being treated for major depressive disorder, posttraumatic stress syndrome and borderline personality disorder. (ECF No. 15 at 16.) She also asserts that the hypothetical failed to include Dr. Severinghaus’s assessed limitations of occasional problems with attention, concentration, and memory. (ECF No. 15 at 17.)

Plaintiff relies upon the records from her treatment with Spokane Mental Health (“SMH”) in arguing that she suffers from severe mental impairments. But the ALJ discounted the records from SMH because Plaintiff did not seek treatment until December, 2006, several months after she underwent a psychiatric evaluation on behalf of the State related to her social security disability application. The ALJ noted that while Plaintiff complained to SMH of severe symptoms, she failed to present any of these severe symptoms in her initial psychological evaluation. Additionally, Plaintiff attended only a few counseling sessions. The ALJ concluded that it appeared Plaintiff was consciously attempting to portray non-existent limitations in order to generate evidence for her social

security disability application and appeal. (Tr. 19.)

Credibility determinations are the province of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). In this instance, the ALJ properly relied upon Plaintiff’s inconsistent complaints, the suspect timing, and her failure to pursue treatment in determining Plaintiff’s negative credibility. Where, as here, the ALJ offered specific, clear and convincing reasons for discounting Plaintiff's subjective pain testimony, and substantial evidence in the record supports those findings, the ALJ’s decision must be upheld. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Plaintiff also asserts that the hypothetical failed to incorporate her mental limitations as assessed by Dr. Severinghaus. She argues that Dr. Severinghaus opined that she would experience occasional glitches in attention and concentration, along with memory problems, and “occasional” means 1/3 of the day to “most vocational experts.” (ECF No. 15 at 17.)

A hypothetical question posed to a vocational expert must contain “all of the limitations and restrictions” that are supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *see also Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001). “If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.” *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

Notwithstanding Plaintiff’s assertions to the contrary, Dr. Severinghaus’ limitations were incorporated into the hypothetical. Dr. Severinghaus found Plaintiff had “no evidence of impaired memory other than occasional forgetfulness related to stress and depression. Attention and concentration are intact overall, with

again some occasional glitches related to anxiety and depression.... Pace and persistence seem fairly intact....” (Tr. 241.)

The hypothetical included:

> She has no disabling mental health impairments, but due to some anxiety component, etcetera, at work center she may exhibit slight only limitations in highly engaging social interaction or in maintaining her pace in workman like activities during the work day. These are slight limitations only. She can perform basic functions of the job relative to her cognition and social skills, has no thought disorder.

(Tr. 42-43.) The hypothetical explicitly addressed Plaintiff’s slight limitations in maintaining pace.

But Plaintiff argues that Dr. Severinghaus’s use of the word “occasional” meant that Plaintiff would experience a “glitch” up to one-third of the day. (ECF NO. 15 at 17.) This argument is problematic. First, Dr. Severinghaus is a doctor, not a vocational expert and thus resorting to the general definition allegedly used by vocational experts to interpret Dr. Severinghaus’s definition is not meaningful.

Second, Plaintiff’s assertion is without citation to legal authority and is lacks foundation in the record. It is not apparent in the record that Dr. Severinghaus was attempting to use the word “occasional” as a term of art as used by the vocational experts. Moreover, while Dr. Severinghaus provided no quantitative testimony related to what he meant by “occasional,” the use of the word “glitch” implies that the interruptions Plaintiff might experience would be brief.[2] Plaintiff’s assertions that her mental impairments would preclude her from working for one-third of the workday is not

---

[2]“Glitch” is defined by Merriam-Webster as “a usually minor malfunction.” http://www.merriam-webster.com/dictionary/glitch.

well taken. By contrast, the record supports the ALJ's determination that Plaintiff could have slight difficulties in maintaining a workman like pace during the workday is supported by Dr. Severinghaus's notes in the record. The ALJ properly included Dr. Severinghaus' limitations in the hypothetical given to the vocational expert.

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 20.)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 15.)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

DATED July 29th, 2011.

S/JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE